United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Sinclair & Wilde, Ltd., Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 20-20304-Civ-Scola |
| ) | |
| TWA International, Inc. and others, ) | |
| Defendants. ) | |

### Order Granting Motion for Judgment on the Pleadings with Respect to Counts One, Two, and Four

Plaintiff Sinclair & Wilde, Ltd., complains Defendants TWA International, Inc., Eduardo Nunez, and Carlos Villaurrutia failed to timely provide an airplane for a six-month lease, as promised, after Sinclair wired them $330,000. (Am. Compl., ECF No. 10.) In its complaint, Sinclair sets forth claims for fraud in the inducement (count one), fraudulent misrepresentation (count two), breach of contract (count three), conversion (count four), and unjust enrichment (count five). Defendants TWA and Villaurrutia[1] (together, the "Movants") now ask the Court to enter partial judgment on the pleadings with respect to Sinclair's fraud and conversion counts (counts one, two, and four). (Defs.' Mot., ECF No. 25-1.) The Movants maintain that Sinclair fails to plead its fraud claims with particularity, fails to otherwise state claims for fraud, and fails to state a claim for conversion that is independent of or distinguishable from its contract-based claim. Sinclair has responded, countering that it has sufficiently pleaded its fraud claims and that its conversion and contract-based claims are adequately distinct. (Pl.'s Resp., ECF No. 31.) After careful review, the Court finds the Movants entitled to partial judgment on the pleadings with respect to Sinclair's fraud and conversion claims. Accordingly, the Court **grants** the Movants' motion (**ECF No. 25**.)

1. **Background**

TWA is an aviation company that focuses on the lease and sale of aircraft. (Am. Compl. ¶ 14.) Villaurrutia is TWA's president and director; he is also listed as TWA's corporate contact on the company's website. (*Id.*) TWA's website also lists Nunez's phone number as a contact for TWA. (*Id.* ¶ 15.)

In August 2019, Sinclair began looking into leasing a plane on a long-term basis. (*Id.* ¶ 18.) A pilot who had previously piloted an aircraft for Sinclair

---

[1] It does not appear from the docket that Defendant Eduardo Nunez, who may reside in Mexico, has yet been served.

introduced Sinclair to the Defendants. (*Id.*) Sinclair first communicated with the Defendants by contacting Nunez, on August 9, through the number listed for him on TWA's website. (*Id.* ¶ 19.) Initially, Sinclair told Nunez that it was interested in a long-term lease of TWA's Gulfstream V plane and asked about its availability and associated terms. (*Id.* ¶ 20.) Nunez promptly responded with details about the plane and various terms: the cost would be $125,000 a month which would include sixty hours of flight time; the minimum term would be one year; a deposit equal to three-months was required; the monthly payments would be due in advance; the Defendants would be responsible for paying for major maintenance; and Sinclair would be responsible for routine maintenance. (*Id.* ¶ 21.) At the same time, Nunez told Sinclair that the Defendants had a Gulfstream IV plane available for lease, as well, with similar terms, but for only $60,000 a month. (*Id.*)

After several days of negotiations, between Sinclair and the Defendants, the parties agreed on a six-month lease of the Gulfstream IV, not the V, at $55,000 a month, with Sinclair's paying for all six months up front. (*Id.* ¶ 22.) Sinclair told the Defendants that the plane would be needed for a flight to Europe, for Sinclair to attend a scheduled meeting, no later than August 28. (*Id.*) Nunez assured Sinclair that the timing would not be an issue and the plane would be ready, in time to depart from Florida. (*Id.*) Sinclair says the Defendants knew that if the plane was not ready for departure by August 28, Sinclair would incur additional costs, including payments for chartered planes to accommodate Sinclair for extensive travel planned throughout September and October. (*Id.*)

On August 21, following negotiations, the Defendants sent Sinclair the lease for the Gulfstream IV. (*Id.* ¶ 23.) The next day, Nunez sent Sinclair an invoice for $385,000—later acknowledged to reflect the incorrect amount. (*Id.* ¶ 24.) On August 23, Sinclair wired the correct amount—$330,000—to a TWA account at Wells Fargo Bank. (*Id.*) Later that same day, Nunez acknowledged receiving the $330,000 and promised Sinclair that he would send the executed lease. (*Id.*)

After wiring the deposit, Sinclair repeatedly advised the Defendants of the urgency of its upcoming trip to Europe. (*Id.* ¶ 25.) In response, Nunez continued to reassure Sinclair that the plane would be ready in time. (*Id.*) In the meantime, the parties negotiated terms for a crew to pilot the plane. (*Id.*) On August 27, however, a pilot notified Sinclair that the plane would not be ready to depart from Miami for the trip because of "issues" with the aircraft. (*Id.* ¶ 26.)

On that same day, Sinclair told Nunez that, because the plane was not going to be ready, Sinclair would need to charter a flight for the Europe trip. (*Id.* ¶ 27.) Accordingly, Sinclair demanded the prompt refund of its $330,000. (*Id.*) In response, on August 28, the Defendants said that the Gulfstream IV could be

ready by September 2 and the V could be ready by September 23. (*Id.* ¶ 28.) Sinclair found the proposals unacceptable and continued to request the return of its $330,000. (*Id.*)

The next day, after failing to hear anything from the Defendants, Sinclair again demanded the return of its $330,000. (*Id.* ¶ 29.) Nunez responded, telling Sinclair it would take a few days for the Defendants to return the money. (*Id.*) The Defendants continued to promise the return of the $330,000 and also continued to advise Sinclair that the two planes would be available for lease. (*Id.* ¶ 30.) But, despite these repeated promises, the Defendants never returned the funds and never made either plane available in Miami for any of Sinclair's future trips. (*Id.*)

In the meantime, although Sinclair didn't know it at the time, the Defendants, simultaneous to their negotiations with Sinclair about the lease, were attempting to sell both planes. (*Id.* ¶ 31.) Sinclair believes the Defendants refused to return its $330,000 because they used it to complete maintenance on the planes to ready them for sale. (*Id.*) Eventually, the Defendants did sell the planes. (*Id.*) Further, Sinclair later discovered that Nunez is a convicted felon, convicted, in 2005 in the Southern District of California, in a case involving drug smuggling and some kind of aircraft fraud. (*Id.* ¶ 31 n.7.) According to Sinclair, because of his conviction, Nunez is prohibited, under federal law, from owning or registering an aircraft for operation in the United States. (*Id.* ¶ 16.)

### 2. Legal Standard

As set forth in Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Cunningham v. Dist. Attorney's Office*, 592 F.3d 1237, 1255 (11th Cir. 2010). A court ruling on a 12(c) motion must "accept all the facts in the [pleadings] as true and view them in the light most favorable to the nonmoving party." *Id.* A motion for judgment on the pleadings is subject to the same analysis as a motion to dismiss pursuant to Rule 12(b)(6). *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

Under the applicable 12(b)(6) standard, a pleading must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

own face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).[2] While the Court must accept well-pleaded facts as true, it need not assume the truth of conclusory allegations, nor are parties entitled to have a court view unwarranted deductions of fact or argumentative inferences in their favor. *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action" insufficient to survive motion to dismiss); *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007) (per curiam). "To obtain a judgment on the pleadings, the moving party must clearly establish that no material issue of fact remains unresolved and that it is entitled to judgment as a matter of law." *Bryan Ashley Intern., Inc. v. Shelby Williams Indus., Inc.*, 932 F. Supp. 290, 291 (S.D. Fla. 1996) (Highsmith, J.)

Additionally, where a cause of action sounds in fraud, Federal Rule of Civil Procedure 9(b) must be satisfied in addition to the more relaxed standard of Rule 8. Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake," although "conditions of a person's mind," such as malice, intent, and knowledge, may be alleged generally. Fed. R. Civ. P. 9(b). "The 'particularity' requirement serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (citations omitted). "When a plaintiff does not specifically plead the minimum elements of their allegation, it enables them to learn the complaint's bare essentials through discovery and may needlessly harm a defendant's goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, [grounded on] baseless allegations used to extract settlements." *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1313 n.24 (11th Cir. 2002). Thus, the Rule's "particularity" requirement is not satisfied by "conclusory allegations that certain statements were fraudulent; it requires that a complaint plead facts giving rise to an inference of fraud." *W. Coast Roofing & Waterproofing*, 287 F. App'x at 86. To meet this standard, the complaint needs to identify the precise statements, documents, or misrepresentations made; the time and place of, and the persons responsible for, the alleged statements; the content and manner in which the statements misled the plaintiff; and what the defendant gained through the alleged fraud. *Id.*

---

[2] The Court uses (cleaned up) to indicate that internal quotation marks, alterations, or citations have been omitted from quotations. *See, e.g., Durham v. Rural/Metro Corp.*, 955 F.3d 1279, 1285 (11th Cir. 2020).

### 3. Analysis

After careful review, the Court finds Sinclair has failed to state claims based on fraud and that Sinclair's claim for conversion is indistinguishable from its claims for either breach of contract or unjust enrichment. Accordingly, the Court concludes the Movants are entitled, as a matter of law, to partial judgment on the pleadings with respect to counts one (fraud in the inducement), two (fraudulent misrepresentation), and four (conversion).

### A. Fraud Claims

Sinclair insists it has properly pleaded its fraud counts. (Pl.'s Resp. at 4–6.) In support, Sinclair specifically points to the following allegations: it first communicated with Nunez on August 9; Nunez advised Sinclair that TWA had both a Gulfstream IV and a Gulfstream V available; and Nunez said that both planes would be ready to fly Sinclair from Miami to Europe no later than August 28. (*Id.* at 4–5.) Sinclair maintains "[t]hese statements were false at the time they were made because TWA, Villaurrutia, and Nunez knew neither [plane] would be ready for lease by August 28 . . . and that they were also actively attempting to sell the [planes], which was never disclosed to Sinclair." (*Id.* at 5.) The Court is not persuaded.

Under Florida law, ordinarily, "[n]either an opinion nor a promise of future action supports a claim of fraud or negligent misrepresentation." *Rothis v. M & I Marshall & Isley Bank*, 8:10-CV-446-T-23EAJ, 2010 WL 3893960, at *5 (M.D. Fla. Sept. 29, 2010) (citing *Mejia v. Jurich,* 781 So.2d 1175 (Fla. 3rd DCA 2001)). An exception to this general rule lies, however, when the person alleged to have expressed the opinion or promise "is one having superior knowledge of the subject of the statement and the plaintiff can show that the . . . person knew or should have known from facts in his or her possession that the statement was false." *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1224 (S.D. Fla. 2010) (Cohn, J.) (quoting *Mejia,* 781 So.2d at 1177).

While certainly the first prong of this exception appears to have been pleaded—the facts surely indicate that Nunez would have superior knowledge regarding the planes as compared to Sinclair—Sinclair has, nonetheless, failed to allege any facts, never mind with particularity, that would establish Nunez knew, or should have known, that the statement was false. Sinclair's allegations—that (1) the planes were also for sale at the time the parties negotiated the lease for the Gulfstream IV; (2) the Defendants used the funds from Sinclair to complete maintenance on the planes; and (3) the Defendants ultimately sold the planes—do not salvage Sinclair's fraud claims. Nothing about these facts reveals Nunez's knowledge that the Gulfstream IV would not be

available by August 28. That is, nothing about trying to sell property while simultaneously trying to lease it indicates fraud; nor does the fact that the planes were eventually sold after the lease fell through. Similarly, the mere fact that the plane required "maintenance" before being leased does not indicate, or even imply, the plane would be unavailable for Sinclair by August 28.

Relatedly, Sinclair's allegations that "[t]he Defendants are a criminal enterprise led by their ringleader[,] Nunez, a convicted felon" (Am. Compl. ¶ 4); "[t]he Defendants never had any intention of delivering the leased aircraft" (*id.*; *see also id.* ¶ 31); "the Defendants knew that there were maintenance issues with the [Gulfstream IV]" (*id.* ¶ 35); and "[t]he Defendants knew, or should have known, that the statements relating to [their] ability to timely deliver the [plane] were false at the time that they entered into the agreement with [Sinclair]" (*id.* ¶ 41) are also unavailing. All these statements are conclusory, lacking in any factual support. Such labels and conclusions fail to sufficiently state a claim upon which relief may be granted. *Twombly*, 550 U.S. at 555.

Because the Court finds Sinclair has failed to state a plausible claim for fraud, the Court grants the Movants' motion for judgment on the pleadings with respect to counts one and two of the amended complaint.

### B. Conversion Claim

Sinclair argues it can seek relief through a conversion claim, in addition to its breach-of-contract claim, because the two claims are distinguishable. In support, Sinclair describes its breach-of-contract claim as being based on the Defendants' failure to timely deliver the Gulfstream IV. (Pl.'s Resp. at 6–7.) Its conversion claim, in contrast, says Sinclair, pertains to the Defendants' wrongfully obtaining possession and exercising control over Sinclair's $330,000 upon its delivery. (*Id.* at 7.) Based on the factual allegations Sinclair sets forth in its complaint, however, the Court finds Sinclair's conversion claim indistinguishable from its contract-based claim.

"Under Florida law, a conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time." *Fogade v. ENB Revocable Tr.*, 263 F.3d 1274, 1291 (11th Cir. 2001) (cleaned up) (quoting Florida law). Accordingly, "in order to state a claim of conversion, one must allege facts sufficient to show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property." *Indus. Park Dev. Corp. v. Am. Exp. Bank, FSB*, 960 F. Supp. 2d 1363, 1366 (M.D. Fla. 2013) (citing *Edwards v. Landsman,* 51 So.3d 1208, 1213 (Fla. 4th DCA 2011)). Further, "[i]n order for money to be an appropriate subject for a conversion claim, there must be an obligation for the receiver to keep intact or deliver the specific money at issue." *Indus. Park*, 960 F. Supp. 2d at 1366. Importantly, "a

debt that can be discharged by the payment of money cannot be the subject of a conversion claim under Florida law." *Tikiz Franchising, LLC v. Piddington*, 17-CV-60552, 2017 WL 8780761, at *6 (S.D. Fla. Aug. 1, 2017) (Bloom, J.). Lastly, a claim for conversion "must go beyond, and be independent from, a failure to comply with the terms of the contract." *Id.* (quoting Florida law).

Here, the only facts Sinclair alleges that could establish its entitlement to the $330,000 are indistinguishable from the facts supporting its contract-based claim. In order to establish its conversion claim, Sinclair would have to show that the Defendants' withholding of the $330,000 is wrongful for reasons beyond their breach of the parties' agreement. For example, Sinclair would have had to have alleged facts showing that it entrusted the $330,000 to the Defendants, to keep intact for Sinclair's benefit or to later deliver back to Sinclair. *See id.* (finding a plaintiff failed to state a claim for conversion where "there [were] no allegations . . . that [the defendant] was obligated to keep the monies intact for [the plaintiff's] benefit or . . . required to deliver the money to [the plaintiff]"). There are no facts alleged, here, that would establish this kind of relationship between the parties.

There are also no facts supporting Sinclair's contention, in its complaint, that "[a]t all relevant times, [Sinclair] was the exclusive owner of all right, title, and interest in and to the $330,000.00 that was delivered to the Defendants." (Am. Compl. ¶ 50.) Instead, the facts Sinclair supplies show only that it is entitled to the money because of the Defendants' breach of contract or unjust enrichment. Further, Sinclair's submission that "[a]t all relevant times, [it] has had a property interest in the $330,000.00 that was delivered to the Defendants and was entitled to [its] immediate return" (*id.* ¶ 51) is belied by its factual allegations. For example, elsewhere in the complaint, Sinclair says it wired $330,000 to a TWA bank account on August 23 in anticipation of the Defendants' delivering, several days later, a plane to Miami for a trip to Europe, which Sinclair then intended to continue to lease for the following six months. (*Id.* ¶ 24.) It was not until August 27, though, when the Defendants notified Sinclair they would not be able to deliver the plane to Miami in time, that Sinclair demanded the return of the full $330,000. (*Id.* ¶¶ 26, 27.) Thus, to the extent Sinclair claims a "property interest in the $330,000," the only facts that support this property interest are those facts that allege the Defendants failed to timely supply the plane that was promised. In other words, in order to show the Defendants' wrongful dominion and control over the funds, Sinclair's complaint relies on facts establishing the Defendants failed to perform or uphold their end of the bargain: that is a claim based on a breach of contract. In sum, Sinclair has simply not alleged facts that would support the separate and independent

tort of conversion as a matter of law, rendering TWA entitled to judgment on the pleadings for this count.

### 4. Conclusion

For the reasons set forth above, the **grants** the Movants' motion for partial judgment on the pleadings (**ECF No. 25**). The Court, thus, **dismisses** Sinclair's fraud claims (counts one and two) and conversion claim (count four) **with prejudice** because it has failed to state claims for relief on any of these bases. Further, the Court **denies** Sinclair's request for **leave to amend**, inserted as an afterthought, at the conclusion of its opposition to the Movants' motion for judgment on the pleadings: the request is both procedurally defective, lacking in substantive support, and untimely. *See Newton v. Duke Energy Florida, LLC,* 895 F.3d 1270, 1277 (11th Cir. 2018) ("[W]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly."); *Avena v. Imperial Salon & Spa, Inc.*, 740 Fed. App'x 679, 683 (11th Cir. 2018) ("[W]e've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend.") (noting also that "a motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment") (cleaned up);  *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241 (11th Cir. 2009) ("A plaintiff seeking leave to amend its complaint after the deadline designated in a scheduling order must demonstrate 'good cause' under [Federal Rule of Civil Procedure] 16(b).").

Lastly, the Clerk is directed to **mail** copies of this order to the parties at the addresses indicated below.

**Done and ordered** in Miami, Florida on October 19, 2020.

_____
Robert N. Scola, Jr.
United States District Judge

**Copies via U.S. mail to**:

**Sinclair & Wilde, Ltd.**
8 Catherine Street, Suite 4A
New York City, NY 10038

**Carlos Villaurrutia**
3005 North 36th Street
McAllen, TX 78501

**TWA international, Inc.**

c/o Capital Administrations, LLC as registered agent
1712 Pioneer Avenue, Suite 115
Cheyenne, WY 82001-4406